1
2
3
4
5

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

6
7
8

DAVID BERNDT, Derivatively on Behalf of
CYTODYN, INC.,

9

            Plaintiff,

Case No.: 3:21-cv-05422

10
11

       v.

**VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT**

12

SCOTT A. KELLY, M.D., NADER Z.
POURHASSAN, PH.D., JORDAN G.
NAYDENOV, ALAN P. TIMMINS, SAMIR
R. PATEL, M.D., and MICHAEL
MULHOLLAND,

13
14
15

            Defendants,

**JURY TRIAL DEMANDED**

16

-and-

17

CYTODYN, INC.,

18

            Nominal Defendant.

19
20
21
22
23
24
25
26

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 1

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff David Berndt, by and through his undersigned counsel, derivatively on behalf of Nominal Defendant CytoDyn, Inc. ("CytoDyn" or the "Company"), submit this Verified Shareholder Derivative Complaint (the "Complaint").  Plaintiff's allegations are based upon his personal knowledge as himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by CytoDyn with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought on behalf of and for the benefit of the Company, against certain of its officers and/or directors named as defendants herein seeking to remedy Defendants (defined below) violations of Section 10(b) and 21(D) of the Securities Exchange Act of 1934 (the "Exchange Act"), their breaches of fiduciary duties and other wrongful conduct as alleged herein and that occurred from March 27, 2020 through the present (the "Relevant Period").  Defendants' actions have caused, and will continue to cause, substantial financial harm and other damages to the Company, including damages to its reputation and goodwill.

2.     The Company is a publicly-traded biotechnology company. Headquartered in Vancouver, Washington, and incorporated in Delaware, the Company is focused on the development and commercialization of a drug named "Leronlimab" which has long been promoted as a potential therapy for HIV patients.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 2

3.      Since the beginning of the global COVID-19 pandemic, however, the Company has made an about-face and has begun to aggressively tout Leronlimab as a treatment for COVID-19.

4.      After the Company's pivot to hyping Leronlimab as a treatment for COVID-19, the Company's stock price rose.  Throughout 2019, the Company's stock traded for less than $1.00 per share. Upon the hyping of Leronlimab as a COVID-19 treatment, however, the Company's stock price significantly increased. The hype peaked when the Company shares reached over $10 per share on June 30, 2020.

5.      The Company issued numerous press releases, conducted conference calls, participated in interviews, and aggressively used several third-party investor relations and stock newsletter services to tout Leronlimab as a treatment for COVID-19 and to pump up the stock price of the Company while executives aggressively sold shares.

6.      Indeed, while the Company's stock price was sufficiently inflated with the COVID-19 cure hype, long-term shareholders, including Defendants Nader Z. Pourhassan and Michael Mulholland, dumped millions of shares.  For example, on April 30, 2020, after exercising options to purchase millions of Company shares at prices less than $1.00 per share, Defendant Pourhassan sold over 4.8 million shares of Company stock, for over $15.7 million in total proceeds. Defendant Pourhassan's sale was approximately 85% of his total holdings of Company stock. In addition, on December 21, 2020, Defendant Mulholland sold over 1.1 million shares for over $5.8 million in total proceeds. Thereafter, on December 28, 2020, Defendant Mulholland sold over 711,000 shares for over $4.4 million in total proceeds.

7.      In addition to overstating the viability of Leronlimab as a COVID-19 treatment, the Company also engaged in a wrongful scheme with its lender, Iliad Research and Trading L.P.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 3

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

("Iliad"), and its principal John Fife ("Fife"), whereby Iliad and other Fife entities operated as an unregistered securities dealer for the Company.  In connection with Iliad lending funds to the Company, Iliad obtained a convertible promissory note from the Company and converted the note into newly issued shares of the Company and sold those shares into the public market at a profit, in violation of the dealer registration requirements of the federal securities laws.

8.      Following Defendants' cash-out of Company shares at artificially inflated prices, the price of Company shares dropped precipitously.  The market has now learned that the Company's development and marketing of Leronlimab as a treatment for COVID-19 was not commercially viable for the Company.

## JURSIDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b) and 21(D) of the Exchange Act.

10.     This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. §1367.

11.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because: (i) CytoDyn maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 4

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to CytoDyn, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

**Plaintiff**

13. ***Plaintiff David Berndt*** ("Plaintiff Berndt") is a current owner of the Company's stock, purchasing his Company stock on June 24, 2020. Plaintiff Berndt has held the stock during the time of the continuous wrongful course of conduct alleged herein and continues to hold his CytoDyn stock. Plaintiff Berndt will fairly and adequately represent the interests of the stockholders in enforcing the rights of the Company.

**Nominal Defendant**

14. ***Nominal Defendant CytoDyn*** is a biotechnology company. Headquartered in Vancouver, Washington, and incorporated in Delaware, the Company is focused on the development and commercialization of a drug named "Leronlimab" which has long been promoted as a potential therapy for HIV patients.

**Director Defendants**

15. ***Defendant Scott A. Kelly, M.D.*** ("Kelly") was named Chairman of the Board in December 2018 and has served as a director since April 2017. Defendant Kelly was named to the non-executive position of Chief Science Officer of the Company in July 2019. He was also appointed Chief Medical Officer and Head of Business Development in April 2020.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 5

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

16.     **Defendant Nader Z. Pourhassan, Ph.D.** ("Pourhassan") joined the Company in 2008 as Chief Operating Officer and by September 2012, was appointed President and CEO. Defendant Pourhassan is also a director.

17.     **Defendant Jordan G. Naydenov** ("Naydenov") has been a Director of the Company since June 2009.

18.     **Defendant Alan P. Timmins** ("Timmins") is a director of the Company.

19.     **Defendant Samir R. Patel, M.D.** ("Patel") is a director of the Company.

20.     Defendants Kelley, Pourhassan, Naydenov, Timmins and Patel are collectively referred to as the 'Director Defendants".

**Officer Defendant**

21.     **Defendant Michael Mulholland** ("Mulholland") is the Company's Chief Financial Officer ("CFO").

22.     The Director Defendants and Defendant Mulholland are herein referred to as "Defendants".

### THE COMPANY'S CORPORATE GOVERNANCE

23.     As members of the Company's Board, the Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and assuring the integrity of its financial and business records.

24.     The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Director Defendants were aware posed a risk of serious injury to the Company.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## THE AUDIT COMMITTEE CHARTER

25.     The Company maintains an Audit Committee Charter.  The Audit Committee Charter states in relevant part:

> To review with management and the Company's independent auditors the adequacy and effectiveness of the Company's financial reporting processes, internal control over financial reporting and disclosure controls and procedures, including any significant deficiencies or material weaknesses in the design or operation of, and any material changes in, the Company's processes, controls and procedures and any special audit steps adopted in light of any material control deficiencies, and any fraud involving management or other employees with a significant role in such processes, controls and procedures, and review and discuss with management and the Company's independent auditors disclosure relating to the Company's financial reporting processes, internal control over financial reporting and disclosure controls and procedures, the independent auditors' report on the effectiveness of the Company's internal control over financial reporting, where applicable, and the required management certifications to be included in or attached as exhibits to the Company's annual report on Form 10-K or quarterly report on Form 10-Q, as applicable.

26.     The purpose of the Audit Committee is to assist the Company's Board in its oversight of accounting, financial reporting and disclosure processes and adequacy of systems of disclosure and internal controls.  The wrongful conduct of the Director Defendants complained of herein violates the Charter of the Audit Committee.

## DUTIES OF THE DIRECTOR DEFENDANTS

27.     By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of the Company, the Director Defendants owed the Company and its investors the fiduciary obligations of trust, loyalty, and good faith.  The obligations required the Director Defendants to use their utmost abilities to control and manage the Company in an honest and lawful manner.  The Director Defendants were and are required to act in furtherance of the best interests of the Company and its investors.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

28.     Each director of the Company owes to the Company and its investors the fiduciary duty to exercise loyalty, good faith, and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.  In addition, as officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, and financial condition, as well as present and future business prospects, so that the market price of the Company's stock would be based on truthful and accurate information.

29.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the affairs of the Company.  By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

(d)     remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)     ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

30.     Each Director Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Director Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

31.     The Director Defendants breached their duties of loyalty and good faith by causing the Company to issue false and misleading statements concerning the business opportunities, results, and prospects of the Company.  As a result, the Company has expended, and will continue to expend, significant sums of money related to investigations and lawsuits.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 9

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1

## SUBSTANTIVE ALLEGATIONS

2

3        32.    On March 27, 2020, the Company issued two press releases regarding

4    Leronlimab's use in treating COVID-19 patients.  The Company issued a release entitled

5    *Leronlimab Used in Seven Patients with Severe COVID-19 Demonstrated Promise with Two*

6    *Intubated Patients in ICU, Removed from ICU and Extubated with Reduced Pulmonary*

7    *Inflammation*.  That press release stated:

8

> VANCOUVER, Washington, March 27, 2020 (GLOBE NEWSWIRE) – CytoDyn
> Inc. (CYDY), ("CytoDyn" or the "Company"), a late-stage biotechnology
> company developing Leronlimab (PRO 140), a CCR5 antagonist with the potential
> for multiple therapeutic indications, announced today the three-day results post-
> Leronlimab treatment of the first four patients under an Emergency Investigational
> New Drug (EIND) granted by the U.S. Food and Drug Administration (FDA). A
> total of seven patients have been enrolled thus far under EIND in the same leading
> medical center in the New York City area.

> The treatment with Leronlimab is targeted as a therapy for patients who experience
> respiratory complications as a result of contracting SARS-CoV-2 causing the
> Coronavirus Disease 2019 (COVID-19). Leronlimab is believed to provide
> therapeutic benefit by enhancing the immune response while mitigating the
> "cytokine storm" that leads to morbidity and mortality in these patients.

> Bruce Patterson, M.D., Chief Executive Officer and founder of IncellDx, a
> diagnostic partner and advisor to CytoDyn, said, "IncellDx has developed specific
> companion diagnostic tests to determine the efficacy and dosing of Leronlimab in
> these severe cases of COVID-19. We found that patients with severe COVID-19
> disease are in the midst of immunologic chaos which includes the cytokine storm.
> Our companion diagnostics showed that after three days of therapy, the immune
> profile in these patients approached normal levels and the levels of cytokines
> involved in the cytokine storm were much improved."

> Jacob Lalezari, M.D., Interim Chief Medical Officer of CytoDyn, commented,
> "These preliminary results give hope that Leronlimab may help hospitalized
> patients with COVID-19 recover from the pulmonary inflammation that drives
> mortality and the need for ventilators. A leading medical center in the heart of the
> New York City epidemic was instrumental in giving the preliminary data."

> Nader Pourhassan, Ph.D., President and Chief Executive Officer of CytoDyn said:
> "We are extremely pleased for the coronavirus patients under the care of the
> treating medical team and that the FDA is so responsive to advance our Phase 2

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 10

clinical trial. I am very hopeful that Leronlimab can help to reduce the rate of mortality among COVID-19 patients with severe symptoms of ARDS and to assist our government to fight this battle."

33.     On March 31, 2020, the Company entered into a Securities Purchase Agreement with Iliad whereby the Company issued a secured convertible promissory note in the initial principal amount of $17.1 million. Iliad gave consideration of $15.0 million. The note was secured by all of the assets of the Company, except its intellectual property. As part of the agreement, Iliad had the option to convert all or part of the outstanding balance into shares of common stock at an initial conversion price of $4.50 per share. Iliad secured anti-dilution adjustments with the promissory note and the conversion price of the promissory note was made subject to full ratchet anti-dilution protection, pursuant to which the conversion price would be automatically reduced to equal the effective price per share in any new offering by CytoDyn of equity securities.

34.     At the same time that the Company was entering into the agreement with Iliad, the Company's stock price rose dramatically as it aggressively touted Leronlimab as a treatment for COVID-19.  After trading below $1.00 per share for the entirety of 2019, the price of the Company stock significantly increased.

35.     Shares of the Company were so actively traded during April 2020 that they accounted for nearly half of all dollar volume on the entire OTCQB Venture Market. The trading volume of the Company trades in April was $612,566,094.[1]

---

[1]     *See* https://www.benzinga.com/news/20/05/16076196/these-were-the-most-active-securities-on-otcmarkets-in-april.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

36.     On April 30, 2020, the Company filed a Form S-3 with the SEC. The Company registered over 46.3 million shares of common stock for resale by "selling shareholders." These shares in the offering were largely comprised of converted preferred stock and exercised warrants and stock options.

37.     One of the selling shareholders identified was Iliad. Pursuant to the Form S-3, Iliad offered 6,300,000 shares that it obtained in connection with the promissory agreement.

38.     Another of the selling shareholders was Bruce Patterson, the CytoDyn "partner" that boasted of Leronlimab's efficacy in treating COVID-19 in CytoDyn press releases.  In the Form S-3, Patterson registered for sale 400,000 warrants and/or stock options. The Form S-3 also noted that Patterson continued to own 169,242 shares following the offering.

39.     Another of the selling shareholders identified in the Form S-3 is Michael McCarthy.  McCarthy is the former owner of The DreamTeam Group, Mission Investor Relations, LLC, and QualityStocks LLC.  On April 10, 2017, the SEC hit McCarthy and his businesses with an Order Instituting Cease and Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease and Desist Order in connection with improper stock promotion of two pharmaceutical companies, Galena Biopharma, Inc., and CytRx Corporation. *See In the Matter of Michael A. McCarthy, The DreamTeam Group, LLC, Mission Investor Relations, LLC, and Qualitystocks LLC*, Administrative Proceeding No. 3-17917, Release No. 10343 (April 10, 2017). The SEC found that McCarthy and his companies paid writers to post misleading internet articles promoting securities of their publicly traded clients. *Id.*  The articles purported to be independent when, in fact, they were promotional pieces indirectly funded by the clients. *Id.*  Galena and CytRx were both fined by the SEC for this conduct and paid tens of millions in shareholder settlements in connection with the scheme.  *See*

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 12

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

*In the Matter of CytRx Corporation*, Administrative Proceeding No. 3-17919, Release No. 10345 (April 10, 2017); *In the Matter of Galena Biopharma, Inc., and Mark J. Ahn*, Administrative Proceeding No. 3-17911, Release No. 10337 (April 10, 2017).

40.    On April 30, 2020, after exercising options to purchase millions of Company stock at prices less than $1.00 per share, Defendant Pourhassan sold over 4.8 million shares of Company stock, for over $15.7 million in total proceeds. Defendant Pourhassan's sale was approximately 85% of his total holdings of Company stock.

41.    On June 30, 2020, the price of CytoDyn stock hit its high of $10.01 per share, on a trading volume of over 56 million trades.

42.    In June 2020, the Company remained the most heavily traded security on the OTCQB Market for that month and for the year to date.  The dollar volume for June was $1,031,931,939, which was more than five times greater than the second-most heavily traded security on the OTCQB Venture Market.

43.    On July 24, 2020, the Company entered into a second amendment to the secured convertible promissory note with Iliad. The second amendment to the Note eliminated the monthly volume limitation on the Investor's sale of Conversion Shares under the Note.

44.    On July 29, 2020, the Company entered into a further agreement with Iliad whereby Iliad would extend credit to the Company in exchange for a $28.5 million Secured Convertible Promissory Note.

45.    On August 17, 2020, the Company issued a press release where it announced that it had requested emergency use approval from the FDA. The press release stated in part:

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 13

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**CytoDyn Submits its Top-line Report from its Phase 2 COVID-19 Trial to the U.S. FDA and Requests Emergency Use Approval**

*The Top-line Report has been sent to the regulatory authorities in Mexico, and will be provided to U.K. MHRA, and E.U. EMA, with requests for emergency use approval CytoDyn*

*(CYDY) is preparing a Phase 3 protocol for Leronlimab use in longhauler COVID-19 individuals*

VANCOUVER, Washington, Aug. 17, 2020 (GLOBE NEWSWIRE) – CytoDyn Inc., ("CytoDyn" or the "Company"), a late-stage biotechnology company announced today it has provided its Top-line Report from its recently completed, randomized, double-blind, Phase 2 trial for COVID-19 patients with mild-tomoderate symptoms to the U.S. Food and Drug Administration (FDA), and requested emergency use approval.

In addition, CytoDyn has sent its Top-line Report of the Phase 2, mild-to-moderate COVID-19 population, to the regulatory authorities in Mexico and hopes to obtain emergency use approval from the MHRA in the U.K., EMA in the European Union, as well as the regulatory authorities in the Philippines.

Along with the above activities, CytoDyn has been approached by several doctors about a clinical study of Leronlimab in long-hauler COVID-19 individuals. The Company is preparing a Phase 3 protocol and will file it as soon as possible.

Nader Pourhassan, Ph.D., President and Chief Executive Officer of CytoDyn, stated, "We are very motivated to provide Leronlimab to patients throughout the world who are suffering from COVID-19. We believe the statistically significant data of NEWS2 findings, along with impressive safety results (less SAEs or AEs with Leronlimab vs. placebo), from our Phase 2 trial set forth in the Top-line Report provides compelling data in support of Leronlimab's use to fight COVID-19. We are in discussions with several regulatory agencies in other countries and hope to obtain emergency approval for its use. We are in a very exciting period for CytoDyn in regards to the potential role of Leronlimab in three different COVID-19 populations, mild-to-moderate, severe-to-critical, and long-haulers."

46.     The statements made in paragraph 44 are false and misleading because, as would later be revealed, the Company did not actually request emergency-use authorization ("EUA") from the FDA.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 14

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

47.     On August 20, 2020, Patterson participated in an interview with Dr. Drew Pinsky, where he noted that he thought the Company would move forward with a federal government program aimed at fast-tracking virus treatments, dubbed Operation Warp Speed.  Patterson's comments "went viral" and CytoDyn stock rose 13% to $3.43 on August 21, 2020, and another 12% to $3.84 on August 24, 2020.

48.     Like Galena, CytRx, and McCarthy's entities, the Company has also aggressively employed stock promotion firms that create misleading newsletters and internet postings to hype investment in CytoDyn and promote the use of Leronlimab as a COVID-19 treatment.

49.     Throughout September 2020, the Company remained the most traded security on the OTCQB Venture Market, with $285,663,617 in Dollar Volume.[2]

50.     Through the use of Company press releases and other information released by CytoDyn's partners, the Company has released, or caused to be released, materially false and misleading statements in violation of the federal securities laws.

### THE TRUTH EMERGES

51.     Following the pump of the Company stock price and cash-out by Company insiders and long-term shareholders, Defendants' scheme began to unravel. For example, on August 26, 2020, *The Wall Street Journal* reported that the Company was not being considered for Operation Warp Speed. According to a senior administration official interviewed by *The Wall Street Journal*, "CytoDyn had only completed a preliminary qualification for being included in the initiative."  The official said that the Company had submitted information through a so-called

---

[2]     *See* https://www.benzinga.com/general/biotech/20/10/18025965/tradershave-rotated-into-bigmultinational-companies-on-otc-market.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

CoronaWatch, a program run by the Biomedical Advanced Research and Development Authority, or BARDA, to assess the viability of drugs and therapeutics that might be effective against COVID-19.  Technical experts reviewed the submission and opted not to proceed further at this time, the official confirmed.

52.     Going further, the official noted that the team responsible for reviewing the materials makes clear to companies that submissions are for informational purposes only and do not lead to funding on their own, and that companies must apply to specific grant programs to receive funding, which the Company has not even done at this time. *See* https://www.wsj.com/articles/small-biotech-stock-cytodyn-soars-on-warp-speed-comment-11598456736.

53.     The day before the publication of *The Wall Street Journal* article, on August 25, 2020, the Company stock closed at $3.81 per share. Following the publication of this article, the Company stock dropped over 17% to $3.15 over the next two trading days.

54.     On September 3, 2020, the SEC filed suit against Iliad, its principal John Fife ("Fife"), and related entities, Chicago Venture Partners L.P., St. George Investments LLC, Tonaquint, Inc., and Typenex Co-Investment, LLC.  Calling Fife a "recidivist violator of the federal securities laws," the SEC alleged that these entities violated the mandatory dealer registration requirements of the federal securities laws. The SEC alleged that Iliad and its related entities, by buying convertible promissory notes, converting the notes into newly issued shares of stock, then rapidly selling those shares into the public at a profit, operated as unregistered securities dealers in violation of the federal securities laws. *See Securities and Exchange Commission v. John M. Fife, Chicago Venture Partners, L.P., Iliad Research and Trading L.P.,*

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

*St. George Investments LLC, Tonaquint, Inc., and Typenex Co-Investment LLC*, Case No. 1:20-cv-05227, Complaint (N.D. Ill. Sept. 3, 2020).[3]

55.     Through Iliad's actions with respect to the Company, including entering into the convertible promissory note and its amendments, converting the note to newly issued shares of Company stock, and settling those shares into the market at a profit, Iliad operated as an unregistered securities dealer and generated substantial profits.

56.     On September 16, 2020, Defendant Pourhassan was forced to admit that no formal EUA request was actually made with the FDA, despite the Company claiming for weeks that it had done so.  Instead, Defendant Pourhassan stated that the Company had asked only for the FDA's opinion, stating "we did not submit a formal letter to FDA saying we want to get Emergency Use Authorization. We asked them for their opinion and they were not positive about it. Their reasoning made a lot of sense to us." *See* Moon Kil Woong, *CytoDyn's Update Provides A Clear Path Towards Approval With Up-Listing Potential Still In The Cards*, TALKMARKETS (Sept. 18, 2020).

57.     On September 17, 2020, the Company was sued in the 11th Judicial Circuit for Miami-Dade County, Florida by stock promoter Shift Media Lab for alleged failure to pay for its stock promotion services.  Shift Media Lab alleged in its complaint that it was providing "services" for CytoDyn for three months at $25,000 per month. Shift Media Lab was previously listed by CytoDyn in a disclosure statement to the OTCQB Venture Market as providing "Brand Awareness" for CytoDyn.

---

[3]     Available at https://www.sec.gov/litigation/complaints/2020/comp24886.pdf.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

58.     On November 10, 2020, the Company entered into an amended $28.5 million Secured Convertible Promissory Note with Fife's company, Streeterville Capital LLC, a related entity that was not specifically named in the SEC action against Iliad and Fife.

59.     On November 10, 2020, the day of the Company's further agreement with the Fife entity Streeterville Capital LLC, the Company stock closed at $2.02 per share.

60.     Through the end of 2020 and the beginning of 2021, the Company continued to aggressively hype Leronlimab as a Covid-19 treatment.  As the Company stock was artificially inflated once again, on December 21, 2020, Defendant Mulholland sold over 1.1 million shares for over $5.8 million in total proceeds. Thereafter, on December 28, 2020, Defendant Mulholland sold over 711,000 shares of Company stock for over $4.4 million in total proceeds.  Moreover, on February 5, 2021, Deborah Celeste Kelly, the wife of CytoDyn Chairman Scott Kelly, filed a Form 144 Notice of Proposed Sale of Securities and listed an "approximate date of sale" as February 1, 2021. The document lists a sale of over 350,000 shares for over $2.5 million.

61.     Beginning on a Friday after the close of trading on March 5, 2020, and continuing over the weekend, the Company issued a flurry of press releases describing the results of Phase IIb/III data on Leronlimab.  Hidden in press releases with titles like "Cytodyn to File Accelerated Rolling Review with MHRA and Interim Order (IO) with Health Canada for COVID-19" and "Cytodyn's Phase 3 Trial Demonstrates Safety, a 24% Reduction in Mortality and Faster Hospital Discharge for Mechanically Ventilated Critically Ill COVID-19 Patients Treated with Leronlimab," however, was a disclosure that the primary endpoint of the study—lowering all-cause mortality at Day 28— was not statistically significant. CytoDyn announced that:

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

***Amongst all patients in mITT, the primary endpoint (all-cause mortality at Day 28) was not statistically significant***. When age adjustment was conducted, the primary endpoint was much closer to statistically significant value. Of note, the reduction of mortality in this population of 65 years and younger leronlimab arm had more than 30% less mortality than placebo and 9% less mortality in participants over 65.

\* \* \*

With the age adjustment analysis in all other major secondary endpoints, there was consistent numerical superiority over the placebo group, with some secondary endpoints approaching statistical significance.  [Emphasis added].

62.      Following the flurry of press releases, the Company was accused of "massaging the data" and squeezing good news out of a failed study, the results of which CytoDyn reportedly sat on pending regulatory discussions. The Company also focused in on a subgroup that accounted for 62 out of 384 patients enrolled in the CD12 trial and declared a survival benefit. While the trial involved severe to critically ill patients, the Company touted that mechanically ventilated, critically ill patients saw a 24% reduction in all cause-mortality between the Leronlimab and placebo arms, without breaking down the number of deaths in either group. *See* https://endpts.com/cytodyntries-to-squeeze-positive-news-out-of-a-failed-covid-19-study-and-shares-take-a-beating/

63.      In the trading days that followed the release of the data, the price of the Company stock dropped.  After closing at $4.05 on March 5, 2021, the Company stock dropped over 28% to close at $2.91 on March 8, 2021.

64.      On March 9, 2021, the Company stock dropped an additional 19% to close at $2.35.

//

//

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

## DAMAGES TO THE COMPANY

55.     The Company's performance issues also damaged its reputation within the business community and in the capital markets.  The Company's current and potential investors consider a company's trustworthiness and ability to accurately value its business prospects and evaluate sales and growth potential.  The Company's ability to raise equity capital or debt on favorable terms in the future is now impaired.  In addition, the Company stands to incur higher marginal costs of capital and debt because the improper statements and misleading projections disseminated by Defendants have materially increased the perceived risks of investing in and lending money to the Company.

56.     Further, as a direct and proximate result of Defendants' actions, the Company has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to, the costs incurred from defending and paying any settlement in the actions brought under Securities Exchange Act of 1934 entitled *Goodwin v. CytoDyn, Inc., et al.*, Case 3:21-cv-05260 (D. Wash.) and *Lewis v. CytoDyn, Inc., et al.*, Case 3:21-cv-05190 (D. Wash.) (the "Securities Class Actions").

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

57.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties, waste of corporate assets, unjust enrichment, and violations of Sections 10(b) and 21(D) of the Exchange Act.

58.     Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 20

59.     Plaintiff is a current owner of the Company stock and has continuously been an owner of Company stock during times relevant to the Director Defendants' wrongful course of conduct alleged herein.

60.     Plaintiff understands his obligation to hold stock throughout the duration of this action and are prepared to do so.

61.     During the illegal and wrongful course of conduct at the Company and through the present, the Board consisted of the Director Defendants.

62.     Because of the facts set forth throughout this Complaint, demand on the Company Board to institute this action is not necessary because such a demand would have been a futile and useless act.

63.     At the time Plaintiff filed this derivative action, the Company Board was comprised of five (5) members – Kelley, Pourhassan, Naydenov, Timmins and Patel.  Thus, Plaintiff is required to show that a majority of the Director Defendants, *i.e.*, three (3), cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

64.     The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

65.     The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this Complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

66.     Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

67.     Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

68.     Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

**Defendant Kelley**

69.     Defendant Kelley is not disinterested or independent, and therefore, is incapable of considering demand because Defendant Kelley has been the Company's Chief Science Officer of the Company and Chief Medical Officer and Head of Business Development.  As such, Defendant Kelley cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

70.     In addition, Defendant Kelley is a defendant in the Securities Class Actions.  As such, Defendant Kelley cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 22

71.     During fiscal year 2020, the Board determined that Kelly was not independent under the NASDAQ Rules.  Accordingly, Kelly resigned from the Compensation Committee on July 25, 2019.

72.     During fiscal year 2020, the Board determined that Kelly was not independent under the NASDAQ Rules. Accordingly, Kelly resigned from the Nominating and Governance Committee on July 25, 2020.

**Defendant Pourhassan**

73.     Defendant Pourhassan is not disinterested or independent, and therefore, is incapable of considering demand because Defendant Pourhassan has been the Company's President and CEO since 2012.  As such, Defendant Pourhassan cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

74.     In addition, Defendant Pourhassan is a defendant in the Securities Class Actions. As such, Defendant Pourhassan cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability.

75.     Defendant Pourhassan also sold stock at inflated prices while in possession of material information.

**Defendant Naydenov**

76.     On December 13, 2019, Defendant Naydenov, a director of the Company, participated in a registered direct equity offering.  Defendant Naydenov purchased 833,333 shares of common stock and received warrants covering 625,000 shares.  Further, Defendant Naydenov received in 2020, $54,585 in cash fees; $1,800,000 in stock awards; and $235,830 in stock options.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

77.     As such, Defendant Naydenov cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten the compensation he receives.

## COUNT I

### (Against The Director Defendants For Breach Of Fiduciary Duty)

78.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.     The Director Defendants owe the Company fiduciary obligations.  By reason of their fiduciary relationships, the Director Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

80.     The Director Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

81.     The Director Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Director Defendants breached their fiduciary duties of loyalty and good faith by allowing the Company to make false and misleading statements and failing to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls as alleged herein.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

82.     As a direct and proximate result of the Director Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages.  As a result of the misconduct alleged herein, the Director Defendants are liable to the Company.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

83.     As a direct and proximate result of the Director Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.

## COUNT II

### (Against The Director Defendants For Waste Of Corporate Assets)

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     The wrongful conduct alleged regarding the issuance of false and misleading statements and its failure to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

86.     As a result of the misconduct described above, the Director Defendants wasted corporate assets by, *inter alia*: (i) paying excessive compensation and bonuses to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

87.     As a result of the waste of corporate assets, the Director Defendants are liable to the Company.

88.     Plaintiff, on behalf of the Company, has no adequate remedy at law.

## COUNT III

### (Against Defendants Pourhassan and Mulholland For Unjust Enrichment)

89.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 25

90.     By their wrongful acts and the omissions of material fact that they caused to be made, Defendants were unjustly enriched at the expense of, and to the detriment of, the Company.

91.     Plaintiff, a shareholder and representative of the Company, seeks restitution from Defendants Pourhassan and Mulholland and seek an order from this Court disgorging all profits, benefits, and other compensation, including any performance-based or valuation based compensation, obtained by Defendants Pourhassan and Mulholland due to their wrongful conduct and breach of their fiduciary duties.

92.     Further, Defendants Pourhassan and Mulholland dumped millions of shares.  For example, on April 30, 2020, after exercising options to purchase millions of CytoDyn shares at prices less than $1.00 per share, Defendant Pourhassan sold over 4.8 million shares of CytoDyn stock, for over $15.7 million in total proceeds. Defendant Pourhassan's sale was approximately 85% of his total holdings of CytoDyn stock. In addition, on December 21, 2020, Defendant Mulholland sold over 1.1 million shares for over $5.8 million in total proceeds. Thereafter, on December 28, 2020, Defendant Mulholland sold over 711,000 shares for over $4.4 million in total proceeds.

93.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, Defendants Pourhassan and Mulholland were unjustly enriched at the expense of, and to the detriment of, the Company.

94.     Plaintiff, on behalf of the Company, has no adequate remedy at law.

//

//

//

//

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## COUNT IV

### (Against Defendants Pourhassan and Mulholland for Violations of Sections 10(b) and 21D Of The Exchange Act)

95.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.     The Company, along with Defendants Pourhassan and Mulholland are named as defendants in the Securities Class Actions, which assert claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Actions for these violations of law, the Company's liability will be in whole or in part due to Defendants Pourhassan and Mulholland's willful and/or reckless violations of their obligations as officers and directors of the Company.

97.     Through their positions of control and authority as officers of the Company, Defendants Pourhassan and Mulholland were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts described in the Securities Class Actions and herein.

98.     As such, Defendants Pourhassan and Mulholland are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

//

//

//

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 27

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(A)     Declaring that Plaintiff may maintain this action on behalf of the Company and that Plaintiff is an adequate representative of the Company;

(B)     Finding the Director Defendants liable for breaching their fiduciary duties owed to the Company;

(C)     Directing Defendants to take all necessary actions to reform and improve the Company's corporate governance, risk management, and internal operating procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the rampant wrongful conduct described herein;

(D)     Awarding Plaintiff the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

(E)     Awarding such other and further relief as is just and equitable.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all issues so triable

DATED this 4th day of June, 2021.

**BADGLEY MULLINS TURNER PLLC**

*/s/ Duncan C. Turner*
Duncan C. Turner, WSBA No. 20597
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
Telephone:  (206) 621-6566
Email:  dturner@badgleymullins.com

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 28

**GAINEY McKENNA & EGLESTON**

Thomas J. McKenna (*Pro Hac Vice forthcoming*)
Gregory M. Egleston (*Pro Hac Vice forthcoming*)
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

***Attorneys for Plaintiff***

## VERIFICATION

I, DAVID BERNDT, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of CytoDyn, Inc. and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of CytoDyn, Inc. common stock at relevant times.

DAVID BERNDT

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT - 29